UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | | |
|---|---|---|
| DANA ANN GARDNER, | ) | |
| | ) | |
| Plaintiff, | ) | 3:10-cv-0686-LRH-VPC |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| LKM HEALTHCARE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

Before the court is defendant LKM Healthcare, LLC's ("LKM") motion for summary judgment. Doc. #27.[1] Plaintiff Dana Ann Gardner ("Gardner") filed an opposition (Doc. #28) to which LKM replied (Doc. #29).

I.    **Facts and Background**

On July 24, 2007, Gardner was employed by LKM as a Certified Nurses Assistant ("CNA") at its Rosewood Rehabilitation Center ("Rosewood"). Gardner, who identifies herself as black, alleges that during her time at Rosewood she, along with fellow black employees, was subjected to different working conditions than similarly situated white employees. Ultimately, Gardner filed a complaint with the Nevada Equal Rights Commission ("NERC") about the alleged discrimination.

On November 26, 2007, Gardner was terminated from her employment with LKM. Subsequently, on November 1, 2010, Gardner filed a civil rights complaint pursuant to Title VII

---

[1] Refers to the court's docket entry number.

against LKM alleging four causes of action: (1) racial discrimination; (2) wrongful

termination/retaliation; (3) intentional infliction of emotional distress; and (4) negligent infliction

of emotional distress. Doc. #4. In response, LKM file a motion to dismiss (Doc. #9) which was

denied by the court (Doc. #14). Thereafter, LKM filed the present motion for summary judgment.

Doc. #27.

## II.   Legal Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together

with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable

to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along

with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party

must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could

find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259

(6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to

facts supported by the record which demonstrate a genuine issue of material fact. *Reese v.

Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might

affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary

judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding

2

1   a material fact is considered genuine "if the evidence is such that a reasonable jury could return a

2   verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla

3   of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute;

4   there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

5   **III.   Discussion**

6       **A.  Race Discrimination**

7       Title VII prohibits employee discrimination on the basis of race, color, religion, sex, or

8   national origin. *See* 42 U.S.C. § 2000e-2(a). To prevail on her Title VII discrimination claim, a

9   plaintiff must establish a prima facie case of discrimination by presenting evidence that "gives rise

10  to an inference of unlawful discrimination." *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1148

11  (9th Cir. 1997); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff

12  can establish a prima facie case of discrimination through the burden shifting framework set forth

13  in *McDonnell Douglas. Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007).

14      Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of

15  establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802.  To

16  establish a prima facie case, the plaintiff must show that: (1) she belongs to a protected class; (2)

17  she was qualified for her position and was performing her job satisfactorily; (3) she suffered an

18  adverse employment action; and (4) similarly situated individuals outside of her protected class

19  were treated more favorably. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (*citing*

20  *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1126 (9th Cir. 2000)); *see also, Bodett v. Coxcom,*

21  *Inc.*, 366 F.3d 736, 743 (9th Cir. 2004); *Orr v. Univ. Med. Ctr.*, 51 Fed. Appx. 277 ("An implicit

22  part of the "qualification" requirement is that the plaintiff was performing her job satisfactorily).

23      If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant

24  to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct.

25  *McDonnell Douglas*, 411 U.S. at 802.  If the defendant provides such a justification, the burden

26

1   shifts back to the plaintiff to show that the defendant's justification is a mere pretext for

2   discrimination. *Id.* at 804.

3           In its motion for summary judgment, LKM concedes that Gardner, as a black woman, was a

4   member of a protected class and that she was qualified for the CNA position as she possessed the

5   appropriate CNA license under Nevada law. *See* Doc. #27. However, LKM argues that Gardner has

6   failed to provide any evidence that she suffered an adverse employment action or that similarly

7   situated non-black CNAs were treated more favorably than she was.

8           The court has reviewed the documents and pleadings on file in this matter and finds that

9   there are disputed issues of fact relating to whether Gardner suffered an adverse employment action

10  and whether similarly situated non-black CNAs were treated more favorably which would preclude

11  summary judgment in this matter. Gardner testified in her deposition that she, along with other

12  black CNAs, was subject to adverse working conditions by her supervisors, namely being given

13  heavier work assignments and longer duties than other white CNAs. Specifically, Gardner testified

14  that she was forced to work in the B wing, a high patient issue wing, during her employment even

15  when she was scheduled to work in the A wing, the less intensive and traditionally "white"

16  employee wing. Allegations of adverse working conditions including assigning less desirable

17  duties, tasks, shifts, and work stations based on race are an adverse employment action because

18  they change the terms and conditions of a plaintiff's employment. *See e.g., International*

19  *Brotherhood of Teamsters v. U.S.*, 431 U.S. 324, 325 fn. 15 (1977).

20          Additionally, Gardner testified that she was verbally and physically harassed and called

21  racially derogatory slurs like "nigger" in meetings and in front of other employees. Therefore, the

22  court finds that there are disputed issues of material fact relating to Gardner's race discrimination

23  claim which precludes summary judgment on this issue.

24  ///

25  ///

26
                                              4

**B.  Retaliation**

In addition to prohibiting gender discrimination, Title VII also prohibits retaliation by making it unlawful "for an employer to discriminate against any of [its] employees . . . because [she] has opposed any practice that is made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two. *Brooks*, 229 F.3d at 928 (citing *Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997)). "Essential to casual link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).

In her complaint, Gardner alleges that she was terminated in relation for filing her complaint with NERC. *See* Doc. #1, ¶30 ("On or about November 26, 2007, [LKM] discharged [Gardner] in retaliation for filing her charge with the Nevada Equal Rights Commission and/or due to her race."). However, the evidence is uncontroverted that LKM did not even learn about Gardner's NERC complaint until December 7, 2007, well after Gardner had been terminated. Gardner herself admits that she did not inform her employer about the filing of her NERC complaint at any time during her employment. Thus, there is no casual link between Gardner's protected activity of filing the NERC complaint and LKM's decision to terminate her employment. Absent the casual link there can be no retaliation as a matter of law. *See Cohen*, 686 F.2d at 796. Accordingly, the court shall grant defendant's motion for summary judgment as to this issue.

**C.  Intentional Infliction of Emotional Distress**

To establish a claim for intentional infliction of emotional distress, a plaintiff must show: (1) extreme or outrageous conduct by defendant; and (2) plaintiff suffered severe emotional distress. *Dillard Dept. Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999). Extreme and outrageous conduct is that which is "outside all possible bounds of decency" and is intolerable in

1   civil life. *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 25 (Nev. 1998).

2          LKM argues that none of the underlying actions in this matter can be considered extreme or

3   outrageous. However, Gardner testified in her deposition that she was called derogatory racial slurs,

4   including "nigger," while at work and in work meetings by the director of nursing at LKM, which

5   the court finds is conduct that is outside the bounds of decency and is intolerable in civilian life.

6   *See Maduike*, 953 P.2d at 25. Therefore, the court finds that Gardner has sufficiently established a

7   claim for intentional infliction of emotional distress and shall deny LKM's motion for summary

8   judgment on this issue.

9

10         IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Doc. #27)

11  is GRANTED in-part and DENIED in-part in accordance with this order. Plaintiff's second cause

12  of action for wrongful termination/retaliation is DISMISSED.

13         IT IS FURTHER ORDERED that the parties shall have thirty (30) days from entry of this

14  order to submit a proposed joint pre-trial order.

15         IT IS SO ORDERED.

16         DATED this 27th day of July, 2012.

17

18         _____

19         LARRY R. HICKS
           UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

6